J-S23021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CARNELL SCOTT, | |
| Appellant | No. 1264 EDA 2014 |

Appeal from the Judgment of Sentence Entered January 14, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013278-2012

BEFORE:  DONOHUE, SHOGAN, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                          **FILED MAY 29, 2015**

Appellant, Carnell Scott, appeals *nunc pro tunc* from the judgment of sentence entered on January 14, 2014, in the Philadelphia County Court of Common Pleas.  We affirm.

The relevant facts of this case were set forth in the trial court's opinion as follows:

> On August 26, 2012, at about 2:45 a.m., Philadelphia Police Officer Joseph Weihe and his partner were on routine patrol when they received a radio call directing [them] to go to the 4700 block of Griscomb Street to investigate reports of a shooting. The officer[s] arrived at that location minutes after receiving the call and Officer Weihe observed people screaming, a male, later identified as Khary Clark, in police custody, and a woman lying on the pavement in front of 4711 Griscomb Street. The woman, later identified Kia Boyd [("Ms. Boyd")], the victim herein, was bleeding and had a faint pulse. Officer Weihe and his

---

Retired Senior Judge assigned to the Superior Court.

partner picked up [Ms. Boyd], placed her in their squad car, and drove her to Temple Hospital where she was pronounced dead.

An autopsy conducted on the body of the victim revealed that [Ms. Boyd] suffered gunshot wounds to her neck and thorax. The cause of death was multiple gunshot wounds and the manner of death was deemed to be homicide. During the autopsy, two .22 caliber projectiles were removed from [Ms. Boyd's] body. They, however, were too damaged to determine if they had been fired from the same firearm.

The instant matter had its genesis in a dispute that began that night between [Appellant] and Khary Clark. Earlier that night, [Appellant], [Ms. Boyd], who was Clark's cousin, and Clark were part of a group that decided to go to a bar located on Torresdale Avenue near Margaret Street. After the bar closed, the group stayed outside the bar talking before they decided to return to Griscomb Street. While outside the bar, [A]ppellant was observed pacing back and forth and going behind a wall where he placed an object believed to be a gun.

Once back at Griscomb Street [Appellant] and Clark began arguing and during the argument [Appellant] was chastising Clark and some others that were present for failing to shoot at a car that had driven slowly down the block. At some point Clark began repeatedly asking [Appellant] to give him his gun back, which [Appellant] apparently had retrieved after Clark had hid it earlier that night. Clark also unsuccessfully tried to mollify [Appellant] who continued to yell and threatened to kill Clark as he pointed a gun at Clark. The men also "tussled" a couple of times.

After [Appellant] pointed the gun at Clark, [Ms. Boyd] jumped in the middle of the two men and asked [Appellant] to give Clark his gun back. [Appellant] eventually did so after [Appellant] spoke to his brother, who[m] Clark had called to complain about [Appellant].

After he returned the gun, [Appellant] stated that he still wanted to fight Clark and also began berating Nianda Rackley, the mother of two of Clark's children, who had returned from the bar with the others and was attempting to get Clark to leave. [Appellant] said that he was going to get his mother to beat up Ms. Rackley and, in response, she said something derogatory to [Appellant] about his mother. After she did so, [Appellant] pulled out a small handgun and began firing it at Ms. Rackley. Clark

pushed Rackley out of the way and began shooting at [Appellant]. When the shooting stopped, [Appellant] was nowhere to be seen and [Ms. Boyd] was lying on the pavement. The police arrived shortly thereafter and took Clark, who had not fled, into custody. Clark, who pleaded guilty to various charges, including third-degree murder, gave police a statement. Clark's gun was found by police in a van belonging to Ms. Rackley, which was parked on Griscomb Street when the shooting occurred.

Following the incident, police obtained an arrest warrant for [Appellant]. It was executed on August 30, 2012. While police were serving the warrant, [Appellant] attempted to flee.

Trial Court Opinion, 7/23/14, at 2-4 (unnumbered).

Appellant was arrested and charged, *inter alia*, with an open charge of murder, recklessly endangering another person ("REAP"), carrying a firearm without a license, and carrying a firearm on a public street in Philadelphia. Following a jury trial, Appellant was found guilty of third-degree murder, REAP, and the firearm offenses. On January 14, 2014, the trial court sentenced Appellant to an aggregate term of twenty-three and one-half to forty-seven years of incarceration followed by seven years of probation. Appellant filed a post-sentence motion, which was denied on February 7, 2014, but did not file a direct appeal.

On March 24, 2014, Appellant filed a timely petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546, in which he sought the reinstatement of his direct appeal rights. On April 21, 2014, the PCRA court granted Appellant the right to file a direct appeal *nunc pro tunc*. Thereafter, Appellant filed a timely notice of appeal and complied with the

trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, Appellant presents the following issue for this Court's consideration:

> Whether Appellant is entitled to an arrest of judgment as to the charge of Third-Degree Murder, because the evidence presented at trial was insufficient for a finder of fact to render a guilty verdict beyond a reasonable doubt.

Appellant's Brief at 6. Specifically, Appellant contends that the Commonwealth failed to prove that he fired the fatal shots. Appellant's Brief at 11.

When examining a challenge to the sufficiency of the evidence:

> The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Orr*, 38 A.3d 868, 873 (Pa. Super. 2011) (quoting

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011)). This

standard is similarly applicable in cases where the evidence is circumstantial rather than direct, "so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Santiago*, 980 A.2d 659, 662 (Pa. Super. 2009) (quoting *Commonwealth v. Johnson*, 818 A.2d 514, 516 (Pa. Super. 2003)).

The crime of murder is set forth in the Crimes Code as follows:

**§ 2502. Murder**

**(a) Murder of the first degree.**--A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

**(b) Murder of the second degree.**--A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

**(c) Murder of the third degree.**--All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

18 Pa.C.S. § 2502(a)-(c).

Accordingly, "third-degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." *Commonwealth v. Thompson*, 106 A.3d 742, 757 (Pa. Super. 2014) (quoting *Commonwealth v. Truong*, 36 A.3d 592, 597 (Pa. Super. 2012) (*en banc*)). Malice is defined as:

wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured[.] Malice may be found where the [Appellant] consciously disregarded an unjustified and extremely high risk that his

actions might cause serious bodily injury. Malice may be inferred by considering the totality of the circumstances.

*Id*. (quoting *Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (Pa. Super. 2011)). "[F]leeing the scene may be considered in determining if an individual acted with malice." *Dunphy*, 20 A.3d at 1220 n.3 (citations omitted). "Malice may be inferred from the use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Ventura*, 975 A.2d 1128, 1142 (Pa. Super. 2009) (citation omitted).

Additionally, the Crimes Code explains the culpability of an actor where the victim is other than whom was intended:

**§ 303. Causal relationship between conduct and result**

**(a) General rule.**--Conduct is the cause of a result when:

(1) it is an antecedent but for which the result in question would not have occurred; and

(2) the relationship between the conduct and result satisfies any additional causal requirements imposed by this title or by the law defining the offense.

**(b) Divergence between result designed or contemplated and actual result.**--When intentionally or knowingly causing a particular result is an element of an offense, the element is not established if the actual result is not within the intent or the contemplation of the actor unless:

(1) the actual result differs from that designed or contemplated as the case may be, **only in the respect that a different person or different property is injured** or affected or that the injury or harm designed or contemplated would have been more serious or more extensive than that caused; or

(2) the actual result involves the same kind of injury or harm as that designed or contemplated and is not too remote or accidental in its occurrence to have a

> bearing on the actor's liability or on the gravity of his offense.

18 Pa.C.S. § 303(a) and (b) (emphasis added).

As noted, Appellant argues that because the Commonwealth did not prove that he fired the fatal bullets, his conviction cannot stand. We disagree.

In ***Commonwealth v. Gaynor***, 648 A.2d 295 (Pa. 1994), our Supreme Court was faced with a similar fact pattern. In that case, the Supreme Court was asked to consider whether Michael Gaynor, who exchanged gunfire with an individual named Ike Johnson in a store that was open to the public, could be convicted of first-degree murder for the killing of an innocent bystander. *Id*. at 297. It was established at trial that the bystander was a child who was not part of the gun battle and that the child died as a result of bullets fired from Johnson's gun. *Id*. at 296. The Supreme Court discussed 18 Pa.C.S. § 303 concerning transferred intent, and the Court concluded that Gaynor's conviction of first-degree murder was proper. *Id*. at 299. The Supreme Court reasoned as follows:

> For purposes of establishing sufficiency of the evidence, it is obvious that Gaynor intended to kill Ike Johnson. The actual result, of course, was that another person was killed instead of the intended victim. Section 303(b) establishes liability when intent must be proved if the Commonwealth establishes (a) that the only difference between the intended result and the actual result is that a different person was harmed; or (b) that the actual result is of the same type as was intended and is not too remote to justify liability.

*Id*. at 298. The Court continued: "We conclude under [18 Pa.C.S.] § 303(b) that the actual result can be attributed to Gaynor's intent to kill Johnson even though the latter's bullets murdered and wounded the victims." *Id*. at 299.

Appellant claims that because *Gaynor* was a first-degree murder case, it is inapposite as "there is no established specific intent to kill that can be transferred to the victim." Appellant's Brief at 12. We disagree because specific intent to kill is not required, only malice.

While Appellant was charged with an open count of murder, the jury concluded that he was guilty of third-degree murder, and therefore, we are not concerned with specific intent to kill, as that is not an element of third-degree murder. 18 Pa.C.S. § 2502(c). Nevertheless, Appellant's actions were unquestionably directed toward Clark with, at the very least, a conscious disregard for the high risk of causing seriously bodily injury. This constitutes malice. *Thompson*, 106 A.3d at 757. This malicious intent was transferred to Ms. Boyd. Under a transferred intent theory, a defendant may be found guilty of murder even though he did not fire the fatal shot where the Commonwealth proves that the only difference between the intended result and the actual result is the person harmed. *Gaynor*, 648 A.2d at 298 (1993); 18 Pa.C.S. § 303(b). Additionally, transferred intent permits inferences of malice and specific intent to flow to an unintended victim. *Commonwealth v. Jones*, 912 A.2d 268, 280 (Pa. 2006).

As set forth above, Appellant chose to engage in a gunfight on a public street with Clark, and during their exchange of gunfire, Ms. Boyd was killed. While there was no forensic evidence that directly linked the bullets that killed Ms. Boyd to the gun Appellant fired, such evidence is not required. *Gaynor*, 648 A.2d at 298 (1993); 18 Pa.C.S. § 303(b). After considering the totality of the circumstances, while Appellant may not have intended to kill Ms. Boyd, he acted with malice and intentionally fired his weapon at Clark. Appellant's actions, his recklessness of consequences and conscious disregard for the extremely high risk that his actions might cause serious bodily injury, and the fact that the gunfight did result in Ms. Boyd's death, is sufficient to sustain Appellant's conviction for the crime of third-degree murder. *Thompson*, 106 A.3d at 757; 18 Pa.C.S. § 303(b). Stated differently, had Clark been the one who was killed during the gunfight, the evidence would have been sufficient to prove third-degree murder, and thus, through transferred intent, that same evidence is sufficient to establish third-degree murder with respect to the killing of Ms. Boyd.

Because we conclude that the evidence was sufficient to prove that Appellant is guilty of third-degree murder, he is entitled to no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/29/2015